# Richmond

HAZEL REPPEN FUREY v. RICHARD T. FUREY.

June 16, 1952.

Record No. 3942.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Joseph P. Smyth,* for the plaintiff in error.

*Frank L. Ball,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The sole question for decision in this case is whether a wife can maintain a suit against her husband for a tort committed by him against her before their marriage.

Plaintiff, the wife, brought this action to recover damages from the defendant for injuries which she alleged were caused by his gross negligence in driving an automobile in which she was riding as a passenger. Defendant filed a plea in bar denying plaintiff's right to maintain the action because after the accident she and defendant had married and were husband and wife at the time of bringing suit and at the time of hearing. The facts alleged in the plea being admitted, the court sustained the plea and dismissed the action. The error assigned is to that ruling.

Plaintiff bases her right to maintain the suit on section 55-36 of the Code, 1950, which provides in pertinent part that: "—A married woman may contract and be contracted with and sue and be sued in the same manner and with the same consequences as if she were unmarried, * *."

In *Keister* v. *Keister* (1918), 123 Va. 157, 96 S. E. 315, 1 A. L. R. 439, the quoted part of this statute, which in identical words was then part of section 2286-a of Pollard's Code of Virginia, 1904, was held to refer only to remedies and not to confer "the substantive right" on a married woman to sue her husband for an assault committed by him on her during the coverture. It was there said:

"The substantive civil right in question is a legal existence —a legal personality—of a married woman, separate and apart from the legal personality of her husband, during coverture.

Such a right a married woman had not and has not at common law." 123 Va. at p. 161, 96 S. E. at p. 316.

█ It was further said that the question was not whether the statute had given married women the same remedies they would have if unmarried, but whether it "has conferred on married women the particular substantive right aforesaid." 123 Va. at p. 161, 96 S. E. at p. 316. The statute, it was observed, being in derogation of the common law, was to be strictly construed and read as if the common law remained unchanged unless the purpose to change it appeared expressly or by necessary implication.

█ It was concluded that, "If the legislature had intended to confer upon married women the substantive civil right of a legal existence and legal personality separate and apart from that of the husband, during coverture, nothing was easier than for it to have said so in language of no uncertain meaning. If it intended not to confer such a substantive right, but merely to enlarge the remedies of married women with respect to other substantive rights of theirs existing at common law and conferred by the first portion of this very statute, the language of the statute was appropriate to accomplish the latter purpose and its object is fully accomplished when the statute is given that meaning." It was not necessary, the court added, that any further meaning be given to it and no further meaning could be given to it. 123 Va. at pp. 163-4, 96 S. E. at p. 317.

The plaintiff in the present suit argues that that construction of the statute applies only to torts committed during coverture, and that there is language in the opinion which gives the wife the right to sue her husband for an antenuptial tort. The sentence relied on is in these words:

"That is to say, the statute under consideration merely provides that at all times during the coverture a married woman is thereby given a right to sue, provided she had, at the time it is alleged that the cause of action arose, the substantive civil right which was necessary, as aforesaid, to give rise to such cause of action." 123 Va. at p. 164, 96 S. E. at p. 317.

█ Taken out of its context that sentence could have that meaning; but when read in its context, it is clear that such meaning was not intended. The clause, "That is to say," refers to the sentence immediately preceding, holding that the effect of the statute is merely to provide that all disabilities

of married women to sue are removed as of the time the suit is instituted upon any cause of action "then existing." But no cause of action could be "then existing," as the quoted sentence explains, without the "substantive civil right" necessary to give rise to it; *i. e.,* a legal personality of the wife separate and apart from the legal personality of her husband, which the common law does not give and which the statute has not conferred. This is made abundantly clear by the sentence following the quoted sentence: "The statute, therefore, is entirely consistent with the common law, which does not confer the substantive right aforesaid on married women, and hence does not change the common law in that regard by implication." 123 Va. at p. 164, 96 S. E. at pp. 317-8.

█ It is the rule of the common law that all liability for antenuptial torts is extinguished by marriage. 27 Am. Jur., Husband and Wife, § 589 at p. 192; 41 C.J.S., Husband and Wife, § 396 at p. 880; Anno., 89 A.L.R. at p. 122.

If nothing can be found in our statute to change the common law rule that a wife cannot sue a husband for a tort committed during coverture, as held in the *Keister Case,* a search of the statute in the light of the principles followed in that case likewise reveals no purpose to change the common law so as to permit a suit by the wife against the husband for a tort committed before marriage. The reason for the conclusion in the second instance is no less compelling than in the first. We have found no case allowing a suit for antenuptial torts in the jurisdictions which have held that their married women's acts have not changed the common law rule against suits for torts committed during coverture. All that have dealt with the question, so far as our search reveals, have held against such right.

*Thompson* v. *Thompson,* 218 U. S. 611, 31 S. Ct. 111, 54 L. ed. 1180, 30 L. R. A. (N. S.) 1153, quoted and relied on in the *Keister Case,* construed a statute of the District of Columbia—the same in all essential particulars as the Virginia statute, said the *Keister* opinion,—and held that it "was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which, at common law, must be brought in the joint names of herself and husband." 31 S. Ct. at p. 112.

Twenty years after the decision in the *Thompson Case* the Court of Appeals of the District of Columbia held, in *Spector* v. *Weisman,* 40 F. (2d) 792, under the statute construed in the

*Thompson Case,* that a wife cannot maintain an action against her husband for damages for personal injuries sustained in an automobile accident caused by the negligence of the husband before they were married. In that case the suit was begun but not brought to judgment before the marriage. It was held that the District of Columbia statute had not changed the common law to permit such an action, whether the injuries had been inflicted before or after the marriage.

In *Staats* v. *Co-op. Transit Co.,* 125 W. Va. 473, 24 S. E. (2d) 916, the plaintiff was injured in a collision while a guest passenger in an automobile driven by Staats. She brought suit against Staats and another, but before trial she married Staats. It was held that she could not continue to maintain the action against her husband. The court said that the rule established in *Poling* v. *Poling,* 116 W. Va. 187, 179 S. E. 604, holding that the West Virginia married women's statute, substantially the same as the quoted Virginia statute, did not enable a husband or wife to maintain an action against the other for a tort committed during coverture, was based upon "abundance of authority, correct reasoning and sound public policy;" and that the same considerations compelled a holding that the plaintiff could not, after becoming the wife of defendant, maintain her action against him. 24 S. E. (2d) at p. 920.

The same conclusion was reached in *Lubowitz* v. *Taines,* 293 Mass. 39, 198 N. E. 320; *Patenaude* v. *Patenaude,* 195 Minn. 523, 263 N. W. 546; *Coster* v. *Coster,* 289 N. Y. 438, 46 N. E. (2d) 509, (applying Massachusetts law); *Carmichael* v. *Carmichael,* 53 Ga. App. 663, 187 S. E. 116; *Scales* v. *Scales,* 168 Miss. 439, 151 So. 551; *Webster* v. *Snyder,* 103 Fla. 1131, 138 So. 755; *Raines* v. *Mercer,* 165 Tenn. (1 Beeler) 415, 55 S. W. (2d) 263.[1]

The *Keister Case, supra,* 123 Va. at p. 168, 96 S. E. at p. 319, cited the cases from other jurisdictions dealing with

---

[1] *Raines* v. *Mercer, supra,* well states the reason for these holdings:

"The marital unity, which settled rules of law have recognized through so many years, prevents the operation of those general statutes designed to remove particular disabilities of married women. The question is not whether disabilities have been removed, but whether the long-prevailing rule of the law, declaring husband and wife to be one person, in legal contemplation, has been annulled. Until this rule is annulled by statute, all rights of action for antenuptial wrongs of the husband to the wife are extinguished by their marriage. Because marriage extinguished antenuptial action for tort between husband and wife, the wife could not maintain an action against him for injury to her person committed before marriage or during coverture." 55 S. W. (2d) at p. 264.

the right of action of a wife against her husband for torts under married women's acts and distinguished the opposite holdings in Arkansas, Oklahoma, Connecticut. and New Hampshire on the basis of the difference in the statutes involved. There have been many decisions on the question since the *Keister Case*.[2]

The division of opinion occurs largely from the wording and construction of the particular act, although there are conflicts among the cases not explainable merely by statutory differences. 27 Am. Jur., Husband and Wife, § 591, p. 192.

Although the majority rule applied in the *Keister Case* has been criticized in the opposing cases, and by some textwriters,[3] we have not found that any court which has adopted that rule has changed front. The author of the annotation in 89 A.L.R. 118 says that recent cases have adhered to the "great weight of authority" and hold that the statutes giving married women the right to sue separately for wrongs to their separate property and personal security conferred no right on either spouse to sue the other for personal injuries. Likewise the author of the annotation in 160 A.L.R. 1406 cites cases from some 22 jurisdictions in support of his statement that many later cases have adhered to or noted the continued force of the well-established proposition that the common law rule of unity of husband and wife, forbidding one to maintain an action for damages against the other for personal injuries, subsists in the absence of statutory language sufficiently broad to amount to an unequivocal abrogation.[4]

We have no statute in Virginia removing the common law inhibition against the husband's suing the wife for personal tort. *Cf. Austin* v. *Austin*, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388; *Fehr* v. *General Acci. Fire, etc., Assur. Corp.*, 246 Wis. 228, 16 N. W. (2d) 787, 160 A.L.R. 1402. The unequal situation

---

[2] Those following the "majority rule" as well as those adhering to the "minority rule" are cited in these cases: *Harvey* v. *Harvey* (1927), 239 Mich. 142, 214 N. W. 305; *Courtney* v. *Courtney* (1938), 184 Okl. 395, 87 P. (2d) 660; *Staats* v. *Co-op. Transit Co., supra,* (1943) 125 W. Va. 473, 24 S. E. (2d) 916; as well as in these annotations: 9 A. L. R. 1064; 29 A. L. R. 1482; 33 A. L. R. 1406; 44 A. L. R. 794; 48 A. L. R. 293; 89 A. L. R. 118; 160 A. L. R. 1406.

[3] McCurdy, Torts between Persons in Domestic Relation, 43 Harv. Law Rev. 1030, 1050; Prosser on Torts, § 99 at p. 903.

[4] As stated in the *Keister Case,* the New York statute there said to be the same in substance as ours, was held not to give the wife the right to sue her husband for negligence. *Allen* v. *Allen,* 246 N. Y. 571, 159 N. E. 656. Such right seems now to be afforded by an amendment to the statute. 41 C. J. S., Husband and Wife, § 396 at p. 882.

that would result from giving the wife the right to sue her husband would even take away the consolation of the husband suggested by Eschweiler, J., in his dissenting opinion in *Wait* v. *Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, 48 A.L.R. 276, anticipating results that might follow upon the holding of the majority that the wife could maintain such action against her husband.[5]

The *Keister Case* was decided thirty-four years ago. Although what is now section 55-36 has been thrice amended in regard to elements of damage recoverable by the wife for a personal injury, (Code 1919, § 5134; Acts 1932, p. 21; Acts 1950, p. 460; *Floyd* v. *Miller,* 190 Va. 303, 57 S. E. (2d) 114), there has been no enactment by the legislature giving the wife the right to sue the husband for a tort, which the *Keister Case* held was not given to her by the present statute as to torts during coverture, and which we now hold was likewise not given to her by the present statute for an antenuptial tort.

The reasons assigned by Judge Burks for his concurrence in the *Keister* decision are still valid. After reviewing some of the common law limitations upon the wife, and saying that it was those restrictions which the married women's acts in the several States had removed, he added:

"* * * But it must be borne in mind that marriage is something more than a mere civil contract. The mere act of marriage gives rise to a new status between the parties thereto and society, and to new rights and obligations between the parties themselves. It creates the most sacred relation known to society, and is fostered, regulated and protected by statute. Upon the preservation of its integrity, the health, morals and purity of the State (are) dependent. * * * By the act of marriage, the parties thereto establish a unit of society, which automatically carries with it primary obligations, which cannot be destroyed without reducing that honorable estate to mere licensed cohabitation. * * * Of course, it is competent for the legislature to sever this unity so far as it may seem wise to

[5] Said he: "The uninvited kiss, no matter how cold and chaste, upon the nonconsenting alabaster feme sole brow is an assault and battery, and substantial damages may be awarded for such. * * * Under the present construction by the majority of the rights of the married woman such form of assault and battery by a present day husband must necessarily result in giving a right of action in the present day wife. The surrender of his former immunity is hardly compensated by the possibility of recovering, under the new dispensation, monetary damages by an overkissed husband." 209 N. W. at p. 482.

do so, and it has severed it in respect to the wife's property,[6] but to warrant a holding that either spouse may sue the other for slander, libel or assault, the language of the statute should be so plain that there could be no room for difference of opinion on the subject." 123 Va. at pp. 176-7, 96 S. E. at p. 322.

The judgment below is

*Affirmed.*

---

[6] *Cf. Edmonds* v. *Edmonds,* 139 Va. 652, 124 S. E. 415 (suit by wife against husband for unlawful detainer); *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 90 A. L. R. 348 (wife may have separate domicile from her husband); *Newsom* v. *Fleming,* 165 Va. 89, 181 S. E. 393 (wife may maintain an action for alienation of affections and criminal conversation).