## Richmond

JAMES W. KORMAN, ADMINISTRATOR, ETC. v. ARTHUR J. CARPENTER, JR., COMMITTEE, ETC.

June 13, 1975.

Record No. 740854.

Present, All the Justices.

*James W. Korman (Kinney, Smith & Bitner,* on brief), for plaintiff in error.

*Aubrey M. Daniel, III (Earl C. Dudley, Jr.; Francis X. Grossi, Jr. [D.C.]; Williams, Connolly & Califano,* on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

In *Surratt, Adm'r* v. *Thompson,* 212 Va. 191, 183 S.E.2d 200 (1971), we held that in automobile accident litigation the immunity enjoyed by one spouse from personal injury or death actions initiated by the other should be abrogated. Here we are asked to eliminate the interspousal immunity doctrine in its entirety; or alternatively, to

hold that an action may be maintained predicated upon an injury to one spouse by the marital partner when the wrongful act results in the termination of the marriage by death.

On September 19, 1971, appellee's ward, Alfred B. Houghton, fatally shot his wife, appellant's decedent, Katherine Pollard Maddux Houghton. On his plea of guilty Houghton was convicted of second degree murder and sentenced to serve twenty years in the penitentiary. At the time of the homicide the parties, although not divorced, were living separate and apart, having prior thereto executed a separation and property settlement agreement. Mrs. Houghton was survived by her husband, both parents and two brothers.

The administrator of the decedent's estate brought an action for wrongful death on behalf of Mrs. Houghton's parents and brothers against Houghton's committee. In his motion for judgment the administrator made no claim of economic loss and sought only damages for solace. Houghton's committee demurred on the ground that no action could be maintained under Virginia's Wrongful Death Act (Code § 8-633) since Mrs. Houghton would not have been able to maintain an action for assault against her husband had she lived. The trial court sustained the demurrer, relying upon *Keister's Adm'r* v. *Keister's Ex'ors*, 123 Va. 157, 96 S.E. 315 (1918), and the administrator has appealed.

Appellee says that this action is undistinguishable from *Keister*. There the administrator of a wife's estate brought an action for wrongful death against her husband's personal representative, claiming that she died as the result of an assault by the husband. This court held that no such action could be maintained because the Virginia Married Woman's Act (now Code § 55-36) did not give the wife the right to sue her husband for a personal tort. The controverted question in *Keister* was whether the married woman's statute changed the common law on the subject and conferred upon a married woman a right of action against a husband for damages for an assault upon her by the husband during the coverture. This court concluded that the portion of the statute under consideration had reference only to the remedies thereby given to married women and did not confer the substantive right necessary to support such a right of action by a married woman against her husband.

In *Surratt* we observed that the *Keister* case stood for the proposition that in 1918 the common law afforded the wife no right to sue her husband for a personal tort, and that *Keister* and *Furey* v. *Furey*,

193 Va. 727, 71 S.E.2d 191 (1952), decided that the Married Woman's Act conferred no such right whether the tort was committed before or after marriage.

In abrogating the rules of parental and interspousal immunity in automobile accident litigation in *Smith* v. *Kauffman, Adm'r*, 212 Va. 181, 183 S.E.2d 190 (1971), and in *Surratt*, respectively, we noted the high incidence of liability insurance covering Virginia-based motor vehicles, together with the mandatory uninsured motorist endorsements to insurance policies. We concluded that the rule could no longer be supported as promotive of the peace and tranquility of the home, and that, because of almost universal liability insurance coverage, a rule adopted and followed for the common good no longer served its purpose and in fact prejudiced the great majority. In *Smith* we quoted with approval from *Immer* v. *Risko*, 56 N.J. 482, 489-90, 267 A.2d 481, 484-85 (1970), as follows:

"What the New Jersey Supreme Court said while abrogating interspousal immunity in automobile accident litigation is equally pertinent to this case:

" '[R]ealistically, it must be remembered when dealing with the question of conjugal harmony that today virtually every owner of a motor vehicle with a sense of responsibility carries liability insurance coverage. The presence of insurance militates against the possibility that the interspousal relationship will be disrupted since a recovery will in most cases be paid by the insurance carrier rather than by the defendant spouse. In fact, it is ironic that the presence of insurance has spawned the second rationale, *i.e.*, that of protecting the insurance carriers against fraud and collusion. That rationale belies the possibility that domestic harmony will be disturbed since its very premise is that the interspousal relationship is so harmonious that fraud and collusion will result. Domestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage. The cost of making the injured spouse whole would necessarily come out of the family coffers, yet a tort-feasor spouse surely anticipates that he will be covered in the event that his negligence causes his spouse injuries. This unexpected drain on the family's financial resources could likely lead to an interference with the normal family life.

And it is doubtful that this void in insurance coverage would comport with the reasonable expectations of the insured that this Court has so often sought to protect. . . . In short, the immunity doctrine cannot be fairly sustained on the basis that negligence suits between husbands and wives will disrupt the harmony of the family.' " 212 Va. at 185-86, 183 S.E.2d at 194.

While there have been other judicial exceptions made to the traditional common law protections of the parent-child relationship, there was in each instance a compelling reason for the exception, and the actual conflict was not alone between parent and child. The only exception to interspousal immunity is the one that we carved out in *Surratt* for injuries received in automobile accidents. Prior thereto, and in *Furey*, we said:

"The reasons assigned by Judge Burks for his concurrence in the *Keister* decision are still valid. After reviewing some of the common law limitations upon the wife, and saying that it was those restrictions which the married women's acts in the several States had removed, he added:

" '*** But it must be borne in mind that marriage is something more than a mere civil contract. The mere act of marriage gives rise to a new status between the parties thereto and society, and to new rights and obligations between the parties themselves. It creates the most sacred relation known to society, and is fostered, regulated and protected by statute. Upon the preservation of its integrity, the health, morals and purity of the State (are) dependent. *** By the act of marriage, the parties thereto establish a unit of society, which automatically carries with it primary obligations, which cannot be destroyed without reducing that honorable estate to mere licensed cohabitation. *** Of course, it is competent for the legislature to sever this unity so far as it may seem wise to do so, and it has severed it in respect to the wife's property, but to warrant a holding that either spouse may sue the other for slander, libel or assault, the language of the statute should be so plain that there could be no room for difference of opinion on the subject.' " 193 Va. at 733-34, 71 S.E.2d at 194-95. [footnote omitted]

Notwithstanding *Keister* was decided more than a half century ago and thereafter reaffirmed, and although Code § 55-36 has been

amended a number of times, there has been no enactment by the legislature giving the wife the right to sue the husband for a tort or prohibiting such action. We are not concerned with the outmoded fiction that husband and wife are of "one flesh". We are concerned, as we were in *Keister*, with a policy and with a rule of law that are designed to protect and encourage the preservation of marriages. Interspousal immunity is only a part of a whole system of laws and policies which recognizes the mutual obligations arising from a marriage and which encourages both marital and family harmony.

Appellee contends that the language of the Wrongful Death Act is so clear, and its interpretation by this court has been so consistent, that any change to permit the maintenance of suits where the decedent could not have sued would constitute judicial legislation. This argument was made in *Surratt* and was impliedly rejected by the majority. There we found a compelling reason to modify a previous judicial interpretation and there was no statutory impediment to such action by the court. In deciding the question there we quoted with approval from Mr. Chief Justice Vanderbilt's opinion in *State* v. *Culver*, 23 N.J. 495, 505, 129 A.2d 715, 721 (1957), as follows:

> " '. . . One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his *Interpretations of Legal History* (1922) when he stated, "Law must be stable, and yet it cannot stand still." ' " 212 Va. at 193, 183 S.E.2d at 202.

Tersely stated, the rationale of *Keister* is the preservation of marital harmony. The reason for interspousal immunity is to foster a harmonious and conjugal relationship. Obviously the reason for the rule is lost upon the death of one of the parties for there is no longer a marriage to be saved or a union to be preserved. The modern trend is

to abrogate, or at least substantially modify, the interspousal immunity doctrine. It was pointed out in *Mosier* v. *Carney*, 376 Mich. 532, 138 N.W.2d 343 (1965), that over thirty jurisdictions have either completely abolished, or in certain factual situations modified, the defense of interspousal immunity, and that the rule articulated in *Keister* has survived unaltered in only a minority of states.

In the instant case the marriage was terminated by the willful and intentional killing of one spouse by the other. While no children or grandchildren survived this marriage, the deceased spouse was survived by parents, brothers and sisters who by statute are among those persons permitted to recover in an action for wrongful death. Such action is not a suit between spouses but rather a separate and new action brought for the benefit of these statutory beneficiaries. The statute permits the action if "the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action . . . and to recover damages in respect thereof . . .". Prior to *Surratt* we had consistently held that the injured party referred to in the statute was the deceased spouse, and that since such decedent, if living, could not maintain an action, neither could an action be maintained for the benefit of the decedent's heirs.

Notwithstanding these previous decisions, in light of *Surratt* it would be an anomaly for us to apply interspousal immunity in this case. We would be invoking the doctrine ostensibly to preserve a family relationship which had been voluntarily terminated by the parties; to promote domestic harmony that had disappeared from the marriage; and to save a marriage which had been terminated by the murder of the wife by the husband. The rule of *stare decisis* does not require such specious reasoning. We observe that if a husband intentionally runs over his wife with an automobile, thereby causing her death, he could be found guilty of murder. If he causes his wife's death by his wanton operation of such automobile he could be found guilty of manslaughter. In either event, *Surratt* would permit an action for her wrongful death. We question whether the use of a gun instead of a motor vehicle as the homicide weapon is a valid reason for denying the victim's personal representative a right of action. If this court acted properly in abrogating interspousal immunity in automobile accident litigation, its like abrogation under the circumstances here is required.

We therefore hold that an action for wrongful death may be maintained, predicated upon injuries to one spouse during marriage

arising out of a wrongful act by the other spouse, when such an act results in the termination of the marriage by death, and when the deceased spouse is survived by no living child or grandchild.

In this case we decide only the narrow question presented by the facts. We restrict the precedential scope of this opinion for we are not persuaded that permitting a living spouse to sue for torts committed by one on the other, except in automobile accident litigation, would do otherwise than contribute to the destruction of their marriage. We are also concerned about the divisive effect on the family and the economic consequences of permitting a recovery in a wrongful death action from a surviving parent who is responsible for the care and support of those persons for whose benefit the recovery is had.

The judgment of the lower court sustaining appellee's demurrer is reversed, and the case is remanded for trial.

*Reversed and remanded.*

Harman, J., dissenting.

As did the knights of yore, my Brothers of the majority sally forth across the drawbridge and on to the legislative plain, to strike another, yet nonfatal, blow at that terrible dragon, the common law doctrine of interspousal immunity.

The extremely limited scope of the exception which they create here makes it apparent that even they recognize that the reasons underpinning the doctrine are still valid and viable. This change, therefore, should come from the General Assembly and not from this court. I respectfully dissent for the reasons set forth in the dissenting opinions in *Surratt, Adm'r. v. Thompson*, 212 Va. 191, 183 S.E.2d 200 (1971).