Elsie Y. BYRD, Appellant,

v.

William E. BYRD, Appellee.

No. 81–1038.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1981.

Decided Aug. 25, 1981.

Sidney H. Kelsey, Jr., Norfolk, Va. (Kelsey & Kelsey, Charles ˮE. Sizemore, Jr., Moss, Moss & Sizemore, Norfolk, Va., on brief), for appellant.

William B. Eley, Norfolk, Va. (Eley, Rutherford & Leafe, Norfolk, Va., on brief), for appellee.

Before FIELD, Senior Circuit Judge, MURNAGHAN, Circuit Judge, and ERWIN,* District Judge.

MURNAGHAN, Circuit Judge:

The question presented by the instant case—whether interspousal immunity applies within the federal admiralty jurisdiction to preclude a tort action by a wife against her husband for injuries sustained by her while on the husband's pleasure boat in navigable waters—is truly one of first impression. Authority, not only cases but comment by the treatise authors as well, appears to be nonexistent.[1]

The appeal arises out of a suit by appellant wife against her husband for injuries sustained by her on September 16, 1978, allegedly as a result of her husband's negligence in maintaining an unsafe boat. Appellant was injured, while on board her husband's pleasure craft in the navigable waters of the United States,[2] when the deck chair in which she was seated fell from the flying bridge where it had been placed. Appellant, seeking damages, sued her husband in admiralty in the Eastern District of Virginia. She claimed that her husband was negligent in failing either to affix the deck chair permanently to the deck of the flying bridge or to provide guard rails around the bridge.[3]

Appellee admitted jurisdiction, denied liability, and raised, as an affirmative defense and by motion to dismiss, Virginia's doctrine of interspousal immunity. The district court ruled that Virginia law controlled and that Virginia continued to recognize the doctrine of interspousal immunity and would apply it in this case. It, therefore, dismissed the suit, from which dismissal the wife appeals.

▇ Both parties agree that the instant case falls within the Court's admiralty jurisdiction. This is clearly correct. *Richards v. Blake Builders Supply, Inc.*, 528 F.2d

---

* The Honorable Richard C. Erwin, United States District Judge for the Middle District of North Carolina, sitting by designation.

1. The California Supreme Court, in *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70, 1963 A.M.C. 400 (1962), abolished interspousal immunity for negligent torts in California. Although the negligence there complained of occurred while husband and wife were on the husband's pleasure boat, there is no indication in the opinion that the injury arose on the navigable waters of the United States or, consequently, that there was any question of federal admiralty law. The opinion is grounded entirely in state law and does not consider whether there is any possibility that federal admiralty law might pertain or, if it did, what that law might be.

The Eastern District of Louisiana, in *Winter v. Eon Production, Ltd.*, 433 F.Supp. 742 (E.D. La.1976) specifically noted that it was not required to resolve the question whether Louisiana's law on interspousal immunity would apply in a maritime collision case. 433 F.Supp. at 747 n. 7.

2. As the case was developed below, it apparently was assumed that the accident occurred while the boat was in Virginia waters. At argument, counsel for the appellant suggested that the occurrence took place at or near the border between Virginia and Maryland. Because of the result which we reach, this possible factual discrepancy is of no moment.

3. She also claimed negligence in the alleged violation of the Federal Boat Safety Act of 1971, 46 U.S.C. § 1451 *et seq.*, and the Inland Navigation Rules, 33 U.S.C. § 151 *et seq.*

745 (4th Cir. 1975) (Haynsworth, C. J.).[4] It does not, however, in and of itself, provide an answer to the question posed by the case. All cases involving a tort committed on navigable water, whether brought under federal admiralty jurisdiction, in state court under the saving-to-suitors clause, or in federal court under diversity jurisdiction, are governed by admiralty law. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959). But admiralty law, at times, looks to state law, either statutory or decisional, to supply the rule of decision where there is no admiralty rule on point. *E. g., Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Bell v. Tug Shrike*, 332 F.2d 330 (4th Cir. 1964), *cert. denied*, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964). The Supreme Court in *Wilburn Boat*, a case concerning a marine insurance contract, stated:

> Congress has not taken over the regulation of marine insurance contracts and has not dealt with the effect of marine insurance warranties at all; hence there is no possible question here of conflict between state law and any federal statute. But this does not answer the questions presented, since in the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override

Acts of Congress. [Citation omitted.] Consequently the crucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?

348 U.S. at 314, 75 S.Ct. at 370.

In the instant case, no federal statute speaks to the applicability of interspousal immunity in an admiralty case. Nor has either party, the district court or this Court been able to find any federal case which has even considered the question, much less established a federal admiralty rule determining it. The question in this case is, therefore, whether we should establish a federal admiralty rule governing interspousal immunity in maritime tort suits or whether we should look to applicable state law to provide the rule of decision.[5]

A state law, even though it does not contravene an established principle of admiralty law will, nevertheless, not be applied where its adoption would impair the uniformity and simplicity which is a basic principle of the federal admiralty law, *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 402, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970); *Kermarec, supra*, 358 U.S. at 631, 79 S.Ct. at 410, or where its application would defeat an otherwise meritorious maritime cause of action. *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 980 (8th Cir. 1974),

---

**4.** This Court, in *Richards*, questioned the wisdom of invoking federal admiralty law to decide essentially local suits involving pleasure boats arising in the territorial waters of a state. Based on a reading of earlier Supreme Court cases, however, the Court concluded that such suits fell within federal admiralty jurisdiction until such time as Congress should specifically deal with jurisdiction over suits involving pleasure craft. Congress has not acted to change the law in the intervening six years and we, therefore, follow these earlier decisions and hold that admiralty law applies.

**5.** That would require a determination of which state law governs, *see* n. 2, *supra*, and beyond that, what the governing state's law is. Maryland still applies the doctrine of interspousal immunity in negligent tort cases although it has abrogated the rule in intentional tort cases. *Compare Arch v. Arch*, 11 Md.App. 395, 274

A.2d 646 (1971) with *Lusby v. Lusby*, 283 Md. 334, 390 A.2d 77 (1978). Virginia, at the time suit was brought, applied the doctrine generally except that it had abolished interspousal immunity in automobile cases and in wrongful death cases where one spouse has killed the other. *Counts v. Counts*, 221 Va. 151, 266 S.E.2d 895 (1980); *Korman v. Carpenter*, 216 Va. 86, 216 S.E.2d 195 (1975); *Surratt v. Thompson*, 212 Va. 191, 183 S.E.2d 200 (1971). Moreover, effective July 1, 1981, interspousal immunity in tort suits was abolished altogether in Virginia. Va. Code 8.01–220.1, Session Laws at S. 542, Ch. 451. Whether the old or the new law would apply to this case, and, if the old law applied, whether the instant case is sufficiently like an automobile accident case to warrant extending the exception announced in *Surratt, supra*, are questions we need not decide because of the result we reach.

*cert. denied,* 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974); *In re M/T Alva Cape,* 405 F.2d 962, 969–71 (2d Cir. 1969). *See Moore v. Hampton Roads Sanitation District Commission,* 557 F.2d 1030, 1035 (4th Cir. 1976), reheard *en banc* and decided on other grounds, 557 F.2d 1037 (4th Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978). The state law involved here fails on both accounts.

Whereas at one time interspousal immunity in tort actions was, without significant exception, the law of all the states, presently, in whole or in part, thirty-two states have abrogated the doctrine.[6] On the other hand, eighteen states and the District of Columbia seem still to apply it generally.[7] Moreover, in those states where the doctrine has been abrogated, even greater disunity exists. Some states have abolished the doctrine entirely. Others have abolished it only in cases of intentional torts. Still others have abolished it only in cases arising out of automobile accidents, or only in cases of outrageous, intentional torts, or some other class of cases.[8] Clearly, reference to state law in deciding maritime tort suits between a husband and wife will not lead to uniform decisions.

■ Additionally, it is the standards of maritime law which measure rights and liabilities arising from conduct occurring on vessels on the navigable waters. Negligence in the operation of a boat creates a federal right of recovery in all who are injured by the negligence. *St. Hilaire Moye, supra,* 496 F.2d at 980–81. Therefore, application of a state's law on interspousal immunity, if that state does not permit suits between spouses arising out of negligent torts, as appellee husband contends that the law of Virginia did not, would operate to defeat a substantial admiralty right of recovery.[9] *See St. Hilaire Moye, supra,* 496 F.2d at 980–81 (Court refused to apply state boat guest statute because it would defeat federal right of recovery and disrupt uniformity of admiralty law). It is clear, therefore, that fashioning an admiralty rule dealing with interspousal immunity will further the goal of a uniform admiralty law. Additionally, since we decide that federal admiralty law will not recognize interspousal immunity, our refusal to apply Virginia's law of interspousal immunity (assuming that, as defendant argues, the applicable state law would bar this suit) ensures that no federal right of recovery will be defeated by application of state law.[10]

There may, of course, be questions which, while arising in the context of an admiralty case, are so evidently local in nature and impact that a state's local interest clearly outweighs the federal interest in national uniformity. *E. g., Tug Shrike, supra,* 332 F.2d 330 (beneficiary under Jones Act determined by looking to state law of domes-

---

6. Alabama, Alaska, Arkansas, California, Colorado, Connecticut, Idaho, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin. Annot., *Modern Status of Interspousal Tort Immunity in Personal Injury Actions and Wrongful Death Actions,* 92 A.L.R.3d 901 (1979).

7. Arizona, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Mississippi, Missouri, Montana, Nebraska, Ohio, Tennessee, Utah, and Wyoming. However, a number of these jurisdictions permit suit for torts committed during the marriage in some situations where the marriage has terminated either by divorce or by the death of one of the spouses (victim or tort-feasor). Annot., *Modern Status of Interspousal Tort Immunity, supra,* 92 A.L.R.3d 901.

8. E. g., *Surratt, supra,* 212 Va. 191, 183 S.E.2d 200; *Lusby, supra,* 283 Md. 334, 390 A.2d 77. *See generally* Annot., *Modern Status of Interspousal Tort Immunity, supra,* 92 A.L.R.3d 901.

9. This would be true, of course, only if, as we do, in fact, decide, admiralty law does not apply the doctrine of interspousal immunity. *See* discussion, *infra.*

10. If we were to decide that federal admiralty law recognized immunity between spouses, and if the applicable state law also recognized such immunity we would have no need to reach the question presented by this case since, in either event, the result would be identical.

tic relations). Or, the area may be one where a declaration of preemption by federal rule would leave a complex area largely unregulated, despite complete regulation by the states. *E. g., Wilburn Boat, supra,* 348 U.S. at 316–20, 75 S.Ct. at 371–74. This case is neither of these.

In *Wilburn Boat, supra,* the question presented to the Court was whether it should adopt a state rule relating to marine insurance contracts or fashion a federal one, there being no existing federal rule or policy dealing with the subject. The Court reviewed cases decided by it holding that the states could regulate all types of insurance, including marine, then reviewed the history of congressional action in the field ending with a discussion of the McCarran Act [11] in which it said:

> The measure Congress passed shortly thereafter, known as the McCarran Act, was designed to assure that existing state power to regulate insurance would continue. Accordingly, the Act contains a broad declaration of congressional policy that the continued regulation of insurance by the States is in the public interest, and that silence on the part of Congress should not be construed to impose any barrier to continued regulation of insurance by the States.
>
> The hearings on the McCarran Act reveal the complexities and difficulties of an attempt to unify insurance law on a nationwide basis, even by Congress. Courts would find such a task far more difficult. Congress in passing laws is not limited to the narrow factual situation of a particular controversy as courts are in deciding lawsuits. And Congress could replace the presently functioning state regulations of marine insurance by one comprehensive Act. Courts, however, could only do it piecemeal, on a case-by-case basis. Such a creeping approach

would result in leaving marine insurance largely unregulated for years to come. 348 U.S. at 319, 75 S.Ct. at 373 (footnotes omitted). The Court therefore determined that institution of a federal rule regarding marine insurance was better handled by Congress, which could regulate the whole field, than by the courts and held that admiralty should look to state law in that case.

In contrast, interspousal immunity is a common law doctrine, initiated by courts. *Counts, supra,* 266 S.E.2d at 898 (Poff, J., dissenting). Although there are statements in some cases that it should only be abolished by legislative action,[12] where, as here, there has been no previous consideration of the question of whether the doctrine applies at all in admiralty, this Court is as competent as any other within its respective jurisdiction to determine whether the doctrine is a wise one for establishment in the jurisdiction. Moreover, any decision which we make will establish an easily ascertainable and applied rule; it will not have the effect of leaving a complex field virtually unregulated.

*Bell v. Tug Shrike, supra,* 332 F.2d 330 also does not mandate the application of state law in the instant case. There, this Court was faced with the question whether a woman, "married" to a seaman in an invalid ceremony, qualified as a "surviving widow" for purposes of receiving benefits after the seaman's death under the Jones Act.[13] The Court determined that there was no federal definition of "widow" either in the statute at issue or generally. In addition, the Court cited a number of cases involving other federal statutes where availability of some benefit turned on the familial status of the person claiming the benefit and noted that courts, including the Supreme Court, had repeatedly looked to state law to determine whether the claim-

---

11. 15 U.S.C. § 1011, *et seq.*

12. *See Counts, supra,* 266 S.E.2d at 896; *Lusby, supra,* 283 Md. at 343, 344, 346, 357, 390 A.2d at 81, 82, 88. *And see* cases cited in Annot., *Modern Status of Interspousal Tort Immunity, supra,* 92 A.L.R.3d at 918–19.

13. The Federal Employer's Liability Act, 45 U.S.C. § 51 (1958), rendered a carrier liable to the decedent's "personal representative, for the benefit of the surviving widow . . ." and other listed beneficiaries. The provision was specifically incorporated into the Jones Act, 46 U.S.C. § 688 (1958).

ant possessed the necessary status. The Court therefore held that it should apply state law rather than fashion a federal law of domestic relations, and, determining that the applicable state law did not recognize common law marriages, denied benefits. The Court "emphatically" rejected the argument that

> by applying the law of Virginia to interpret the term "surviving widow" in the Jones Act, a federal right is being defeated by the state. There can be no federal right unless the claimant can qualify as a beneficiary under the statute. Under the circumstances this can only be achieved through a lawful marriage as that term is interpreted in the only available domestic relations law—the law of the domicile.

332 F.2d at 336–337.

■ Again, the instant case is distinguishable. Application of the state law contended for here by defendant will defeat a federal right which plaintiff otherwise already possesses. See St. Hilaire Moye, supra, 496 F.2d at 980–81 (negligence in operation of a boat creates a federal right of recovery in all who are injured by the negligence; state boat guest statute which would defeat the right should not be applied). In addition, domestic relations law, like insurance law, is a body of law where interrelated and sometimes intricate rules have developed over many years. Were the federal courts to declare those fields preempted by federal policy in the context of maritime actions, they would create a situation where no guidelines would exist in substantial areas of the law pending piecemeal and case-by-case structuring of a federal common law. Wilburn Boat, supra, 348 U.S. at 319, 75 S.Ct. at 373. In contrast, as discussed at p. 619, supra, the instant case involves a discrete rule of law, and establishment by this Court of a federal rule applicable in admiralty cases will not pull a thread so as to unravel an estab-

lished, involved and interrelated body of law, leaving nothing in its place. Moreover, a person's familial status is a more or less permanent condition which is primarily pertinent in state law matters [14] and thus is of peculiarly local concern. On the other hand, the decision in the instant case may have national impact beyond that evident in a case involving pleasure craft. Because we must decide the case as a matter of admiralty law, see Richards, supra, 528 F.2d 745, the decision will affect not only private pleasure boats but commercial navigation as well, should appropriate facts arise there.

Finally, unlike the earlier pronouncements by the courts and Congress considered in Wilburn Boat, supra, and Tug Shrike, supra, the existing case law which is relevant here by analogy suggests that we should not apply state law. Moore, supra, 557 F.2d 1030 (federal maritime law, which Court determines would not recognize municipal immunity from suit, applies, even though both parties are Virginia residents, rather than state law which might [15] hold municipality immune from suit and thus defeat federal admiralty claim); St. Hilaire Moye, supra, 496 F.2d 973 (state boat guest statute does not apply to defeat tort claim in federal admiralty case involving pleasure boat). See Alva Cape, supra, 405 F.2d 962 (district court should investigate whether the state's law of municipal immunity was preempted by federal admiralty policy, the inquiry to "consider the need for preserving a uniform maritime rule, granting recovery for damage caused through negligence, against the varying exceptions created by the laws of the 50 states limiting the tort liability of cities". The Court specifically pointed to "adverse impact which might be caused by following state law in this area [which would] be especially evident in New York Harbor, since the laws of New Jersey and New York would create two different rules of recovery and the statutes govern-

---

14. For example, the status of the claimant in Tug Shrike was relevant not only for determining eligibility for federal benefits but also for determining her right to participate in any estate which the deceased seaman may have left. The latter, of course, was clearly a matter of state concern.

15. The Court indicated that it had doubts as to whether Virginia would extend immunity to the municipality in the circumstances of the case but found the question unnecessary to resolve because of its view that admiralty law governed. 557 F.2d at 1035.

ing the liability of the United States possibly a third" and to the Supreme Court's "solicitude toward maritime plaintiffs threatened with nonsuit under a local law"). We think, therefore, that it is appropriate here to determine a federal admiralty rule regarding interspousal immunity.

When we turn to the question of what the uniform admiralty rule should be, the answer seems plain. Interspousal immunity is a doctrine whose day has come and gone. One ancient foundation of the rule—that husband and wife are one flesh and that a wife cannot so separate herself from her husband's bodily corporation as to be capable of maintaining an action against him—" 'cannot be seriously defended today.' " *Surratt, supra,* 212 Va. at 194, 183 S.E.2d at 202 *quoting Immer v. Risko,* 56 N.J. 482, 488, 267 A.2d 481, 484 (1970). The other mainstay of the doctrine—that the prevention of suits between spouses encourages familial harmony—is, we surmise, inapplicable here. In suits involving the negligent operation of an automobile, the great probability of insurance and the consequent presence of an indemnitor to blunt and absorb the distress which a suit between spouses might otherwise be expected to generate, has been a primary justification for the abrogation of the doctrine of interspousal immunity in such cases. *E. g., Korman, supra,* 216 Va. 86, 216 S.E.2d 195; *Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Immer v. Risko, supra,* 56 N.J. at 489–90, 267 A.2d at 484–85.[16] For marine accidents involving pleasure boats, the insurance picture is likely to be similar. Virginia, where the parties are domiciled, does not have in force a compulsory insurance law for motor cars or for pleasure boats. Still the economic factors motivating both vehicle and boat owners to take out casualty insurance are very strong.

Finally, we note that the general trend among the states is toward the abolition of interspousal immunity. *E. g.,* Va.Code 8.01–220.1, Session Laws at S. 542, Ch. 451, abolishing interspousal immunity effective July 1, 1981. It would be anomalous and, within the foreseeable future, creative of less rather than more harmony between state and federal law, to establish the doctrine of interspousal immunity as a living organism of the admiralty law at a time when the trend in the states is towards its abolition.

Accordingly, we hold that marriage between plaintiff and defendant does not create an immunity barring recovery for torts occurring within the federal admiralty jurisdiction. The judgment is reversed, and the case remanded for further proceedings.

REVERSED.

---

16. In fact, it is ironic that ... [d]omestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage. The cost of making the injured spouse whole would necessarily come out of the family coffers, yet a tortfeasor spouse surely anticipates that he will be covered in the event that his negligence causes his spouse injuries. This unexpected drain on the family's financial resources could likely lead to an interference with the normal family life.
*Immer v. Risko, supra,* 56 N.J. at 489, 267 A.2d at 485.