Michael A. LUNA, b/n/f Jere R. Lee, Individually and as sole surviving child and sole heir-at-law of Linda Luna Clayton, Deceased, Appellant,

v.

Sherman CLAYTON, Appellee.

Supreme Court of Tennessee,
at Nashville.

May 23, 1983.

Opinion on Petition to Rehear
Aug. 22, 1983.

Harlan Dodson, Lawrence D. Wilson, Nashville, for appellant.

H. Michael Bennett, Nashville, for appellee.

## OPINION

FONES, Chief Justice.

The sole issue before this Court is whether the common law doctrine of interspousal immunity precludes the bringing of a wrongful death action against defendant for the intentional killing of his wife.

Plaintiff brought suit against his step-father under T.C.A. § 20–5–106 for damages for the wrongful death of his mother, whom his step-father intentionally shot and killed. Defendant moved for summary judgment based upon the factually identical case of *Hance v. Haun,* 216 Tenn. 176, 391 S.W.2d 621 (1965), in which this Court upheld the applicability of the common law prohibition against interspousal suits to dismiss a simi-

lar wrongful death claim. Relying on *Hance v. Haun, supra,* the trial court found that since the doctrine of interspousal immunity would have barred the deceased from suing her husband in tort had she lived, she then had no right of action to pass to plaintiff upon her death. Yet finding disapproval with this rule, the trial court overruled defendant's motion for summary judgment and granted defendant an interlocutory appeal for the reconsideration of *Hance v. Haun, supra.* The Court of Appeals permitted the appeal, but honoring the principle of *stare decisis,* the appellate court reversed the trial court's order and dismissed plaintiff's suit. Plaintiff now asks this Court to overrule its previous holding in *Hance v. Haun, supra,* and accordingly reinstate the trial court's order.

## I.

Plaintiff directs this Court to its recent consideration of the Tennessee Married Women's Emancipation Act, T.C.A. § 36–601, in *Childress v. Childress,* 569 S.W.2d 816 (Tenn.1978), and contends that *Childress* holds that the Act reserved for the wife any cause of action she would have had in tort had she been unmarried, and therefore in the instant case, a derivative cause of action for the deceased's wrongful death survived in her son.

T.C.A. § 36–601, first adopted in 1913, states as follows:

"Married women are fully emancipated from all disability on account of coverture, and the common law as to the disability of married women and its effects on the rights of the property of the wife, is totally abrogated, except as set out in §§ 36–602, 36–603, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully do, if she were not married, but every woman now married, or hereafter to be married, shall

have the same capacity to acquire, hold, manage, control, use, enjoy and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

The Act effectively removed the disability of coverture and its effects upon a woman's property rights based upon the fiction that the legal identity of a woman merged into that of her husband upon marriage; yet as early as 1915, this Court held that the Act "does not n express terms confer upon her the right to sue her husband for torts committed upon her during coverture, nor does it purport by such terms to confer upon him the right to sue her for such torts committed by her." *Lillienkamp v. Rippentoe,* 133 Tenn. 57, 62, 179 S.W. 628, [629] (1915). Following *Lillienkamp v. Rippentoe, supra,* in those cases where torts had been committed between spouses during the existence of their marriage, this Court consistently refused to glean from the Act a statutorily created cause of action which the courts did not recognize at common law. *See Wooley v. Parker,* 222 Tenn. 104, 432 S.W.2d 882 (1968); *Hance v. Haun, supra; Gordon v. Pollard,* 207 Tenn. 45, 336 S.W.2d 25 (1960); *Tobin v. Gelrich,* 162 Tenn. 96, 34 S.W.2d 1058 (1931); *Wilson v. Barton,* 153 Tenn. 250, 283 S.W. 71 (1925).

In cases where torts had been committed between spouses either before a marriage or after its termination by divorce, this Court has not bound itself to the common law and has allowed such suits. *See Childress v. Childress, supra; Brown v. Selby,* 206 Tenn. 71, 332 S.W.2d 166 (1960). We held in *Brown v. Selby, supra,* that the doctrine of interspousal immunity did not preclude a wrongful death action by the administrator of the wife's estate against the wife's ex-husband for a tort occurring after the entry of their divorce decree. Moreover, in *Childress v. Childress, supra,* we permitted a wife to sue her husband in

tort for personal injuries incurred before their marriage. Yet, in neither *Brown v. Selby, supra,* nor *Childress v. Childress, supra,* did we find that the rights of action in tort were legislatively mandated by the Tennessee Married Women's Emancipation Act. In fact, *Childress* clearly states that the Act only "intended to preserve a pre-existing right of action" in tort against her husband regardless of whether she was married to him at the time the tort occurred. Neither are we now inclined to construe the Act accordingly and deviate from this Court's prior construction and reasoning initially enunciated in *Lillienkamp v. Rippentoe, supra:*

"We must assume that the legislature had in mind in the passage of the act the fundamental doctrine of the unity of husband and wife under the common law, and the correlative duties of husband and wife to each other, and to the well-being of the social order growing out of the marriage relation, and that, if it had been the purpose of the legislature to alter these further than as indicated in the act, that purpose would have been clearly expressed, or would have appeared by necesssary implication.

We are not warranted in ascribing to the Legislature by anything appearing in this act a purpose to empower a wife to bring an action against her husband for injuries to her person occurring during the coverture, thereby making public scandal of family discord, to the hurt of the reputation of husband and wife, their families and connections, unless such purpose clearly appears by the express terms of the act." 133 Tenn. at 64, 179 S.W. at 629.

## II.

Our research reveals that the majority of American jurisdictions which have considered the effect of similar married women's acts on the doctrine of interspousal immunity have also consistently held that the acts were not intended to alter the common law rule or to permit any action for any personal tort between the spouses. *See, e.g.,* Prosser, *Law of Torts,* § 122 (4th ed. 1971); 4 Restatement (Second) of Torts § 895F, Comment c (1979). In recent years, however, a number of these jurisdictions have either judicially or legislatively abolished the doctrine totally or in part to permit interspousal lawsuits for intentional torts and/or for torts arising in the context of the negligent operation of a motor vehicle. Presently, twenty-seven states have totally abrogated the doctrine. *See Fernandez v. Romo,* 132 Ariz. 447, 646 P.2d 878 (1982); *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981); *MacDonald v. MacDonald,* 412 A.2d 71 (Me.1980); *White v. White,* 618 P.2d 921 (Okl.1980); *Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979); *Imig v. March,* 203 Neb. 537, 279 N.W.2d 382 (1979); *Coffindaffer v. Coffindaffer,* 244 S.E.2d 338 (W.Va.1978); *Merenoff v. Merenoff,* 76 N.J. 535, 388 A.2d 951 (1978); *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 539 P.2d 566 (1975); *Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947 (1975); *Lundberg v. Hagen,* 114 N.H. 110, 316 A.2d 177 (1974); *Brooks v. Robinson,* 259 Ind. 16, 284 N.E.2d 794 (1972); *Freehe v. Freehe,* 81 Wash.2d 183, 500 P.2d 771 (1972); *Hosko v. Hosko,* 385 Mich. 39, 187 N.W.2d 236 (1971); *Layne v. Layne,* 433 S.W.2d 116 (Ky.1968); *Cramer v. Cramer,* 379 P.2d 95 (Alaska 1963); *Self v. Self,* 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962) and *Klein v. Klein,* 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962); *Silverman v. Silverman,* 145 Conn. 663, 145 A.2d 826 (1958); *Leach v. Leach,* 227 Ark. 599, 300 S.W.2d 15 (1957); *Scotvold v. Scotvold,* 68 S.D. 53, 298 N.W. 266 (1941); *Rains v. Rains,* 97 Colo. 19, 46 P.2d 740 (1935); *Fitzmaurice v. Fitzmaurice,* 62 N.D. 191, 242 N.W. 526 (1932); *Prosser v. Prosser,* 114 S.C. 45, 102 S.E. 787 (1920); *Johnson v. Johnson,* 201 Ala. 41, 77 So. 335 (1917); Wis.Stat.Ann. § 766.075 (1981); N.Y.Gen. Obl.Law § 3–313 (McKinney 1978); N.Gen.Stat. § 52–5 (1976).

Twelve states have partially abrogated the doctrine. *See Stevens v. Stevens,* 231

Kan. 726, 647 P.2d 1346 (1982); *Brown v. Brown,* 381 Mass. 231, 409 N.E.2d 717 (1980); *Counts v. Counts,* 221 Va. 151, 266 S.E.2d 895 (1980) and *Korman v. Carpenter,* 216 Va. 86, 216 S.E.2d 195 (1975); *Stoker v. Stoker,* 616 P.2d 590 (Utah 1980); *Digby v. Digby,* 388 A.2d 1 (R.I.1978); *Lusby v. Lusby,* 283 Md. 334, 390 A.2d 77 (1978); *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Richard v. Richard,* 131 Vt. 98, 300 A.2d 637 (1973); *Beaudette v. Frana,* 285 Minn. 366, 173 N.W.2d 416 (1969); *Apitz v. Dames,* 205 Or. 242, 287 P.2d 585 (1955); Ill.Ann. Stat. ch. 40, § 1001 (1982).

Another ten of our sister states have upheld the doctrine against any encroachment either by judicial or legislative action. *See Hill v. Hill,* 415 So.2d 20 (Fla.1982) and *West v. West,* 414 So.2d 189 (Fla.1982); *Robeson v. International Indemnity Co.,* 248 Ga. 306, 282 S.E.2d 896 (1981); *Alfree v. Alfree,* 410 A.2d 161 (Del.1979); *Varholla v. Varholla,* 56 Ohio St.2d 269, 383 N.E.2d 888 (1978); *State Farm Mutual Auto Ins. Co. v. Leary,* 168 Mont. 482, 544 P.2d 444 (1975); *Ebel v. Ferguson,* 478 S.W.2d 334 (Mo.1972); *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521 (Miss.1971); *McKinney v. McKinney,* 59 Wyo. 204, 135 P.2d 940 (1943); La.Rev.Stat.Ann. § 9:291 (1980); Haw.Rev.Stat. § 573–5 (1976).

Plaintiff contends that the reasons for the common law rule no longer exist in the context of contemporary society and asks this Court to join those jurisdictions which have now abolished the rule, at least in those cases where damages are sought for the wrongful death of a spouse resulting from the other's intentional tort. Defendant argues for retention of the doctrine in its entirety based upon the traditional reasons courts have given in upholding its applicability, that is, abolition of interspousal tort immunity (1) would necessarily undermine and destroy marital harmony and tranquility, (2) would encourage fraud and collusion where a defendant is protected by insurance, (3) would overburden the judicial system with a multitude of trivial and frivolous lawsuits, and (4) would violate the principle of *stare decisis* and should await legislative sanction. Yet we are mindful that "[i]t would be an unjust and harsh law which would narrow the scope of the statutory death action merely because of a rule, the reasons for which are nonexistent." *Brown v. Selby, supra,* 206 Tenn. at 78, 332 S.W.2d at 169. We now consider whether the reasons proffered by defendant exist within the limited context of the instant case to support our adherence to the rule as a bar to the maintenance of a suit for one spouse's wrongful death predicated upon the other's intentional tort.

Addressing defendant's first reason, while the State of Tennessee has an interest in protecting and preserving domestic peace and tranquility in the marriage, it is impossible for us in this case to see how denying plaintiff access to the courts for the redress of a wrong suffered would encourage marital harmony where the marriage has ceased upon the death of a spouse. As stated by the Supreme Court of Virginia, "We would be invoking the doctrine ostensibly to preserve a family relationship which had been voluntarily terminated by the parties; to promote domestic harmony that had disappeared from the marriage; and to save a marriage which had been terminated by the murder of the wife by the husband." *Korman v. Carpenter, supra,* 216 S.E.2d at 198.

Equally specious are arguments in favor of invoking the doctrine to discourage insurance fraud and collusion in that rare instance between a defendant spouse and a child beneficiary under the wrongful death statute and to prevent subjecting the courts to frivolous litigation. Our judicial system is not so ineffective that we must fear frivolous suits to deny relief to a plaintiff otherwise entitled simply because in some prospective application a litigant may be guilty of fraud or collusion. Built into the judicial process are numerous safeguards against fraudulent claims such as the deterrent of a perjury charge, modern discovery

procedures, and the presentation of evidence to juries, all inherent in the Tennessee Rules of Civil Procedure and designed to eliminate surprise and uncover the truth by revealing all the relevant facts. These same factors also militate against claims that insurance companies may be disadvantaged tactically. Moreover, to the extent that insurance companies may fear collusive actions, they have the right to protect themselves by either restricting the scope of their coverage or adjusting premiums accordingly. We, therefore, agree with following observations recently made by the Supreme Court of Kansas:

> "[T]he possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that courts are quite adequate for the task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would even be more on the alert for improper conduct." *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135, 142 (1980).

Finally, we reject defendant's urgings that any abolition of the interspousal immunity doctrine should await action by the Legislature and that the doctrine of *stare decisis* mandates our blind adherence to the rule in this case. This Court recognizes that courts may have previously fashioned a rule of immunity from wrongdoing, having adopted a posture at an earlier date in response to what appeared to be desirable then as a matter of policy; yet when it later appears to be unsound within a given context, especially when the reasons upon which the immunity is based no longer exist, it remains within the domain of the judiciary to reject the applicability of such a rule. Therefore, our response is aligned with the Supreme Court of Indiana which made the following comments in *Brooks v. Robinson, supra,* 284 N.E.2d at 797:

> "[T]he doctrine [of interspousal immunity] is a creature of the common law and

is therefore judicially created. Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the law of the Medes and Persians, and thus render our system of jurisprudence forever impotent. *The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs."* (Emphasis added.)

### III.

■ We hold today that an action for wrongful death against one spouse may be maintained when it is predicated upon an intentional tort to the other spouse during marriage, such act resulting in the termination of the marriage by death. Our holding is consistent with the statutory death action and the major goal of tort law, that is, to compensate the victim rather than punish the tortfeasor. Accordingly, *Hance v. Haun, supra,* is overruled.

In this case we decide only the narrow question presented by the facts. Whether the reasons underpinning the doctrine of interspousal immunity are valid and viable within other contexts must await future consideration.

The judgment of the Court of Appeals is reversed, the trial court's order overruling defendant's motion for summary judgment is reinstated, and the case is remanded for trial. Costs of this appeal are adjudged against defendant.

COOPER, BROCK and DROWOTA, JJ., concur.

HARBISON, J., dissents.

HARBISON, Justice, dissenting.

I respectfully dissent for the reasons hereinafter stated.

Unlike the majority, I do not view this case as one involving the dynamics of the common law or its ability to adapt to change. The matter, in my view, is simply one of statutory interpretation—in this instance the interpretation of statutes which have been consistently construed by this Court for many decades.

Further, I do not believe that it is tenable to limit actions of this sort to those involving wrongful death, at least if we are to adhere to our established interpretation of the Tennessee wrongful death statutes to the effect that they are "survival" statutes and not statutes creating a "new cause of action" in the beneficiaries. Heretofore it has been conceived that an action for wrongful death in this state, despite some ambiguity in the wording of the statutes, is an action brought just as if the deceased himself or herself were plaintiff. *See Jones v. Black*, 539 S.W.2d 123 (Tenn.1976); *Memphis Street Ry. v. Cooper*, 203 Tenn. 425, 313 S.W.2d 444 (1958).[1]

It is, therefore, inescapable that the Court in this case is permitting a wife to sue her husband for an intentional tort committed during marriage. Surely it would be untenable to hold that the stepson of the defendant in the present case could sue him for the wife's death but to hold that she could not maintain an action had he simply put a bullet through her spinal cord and rendered her a permanent paraplegic. Further, if actions for personal injuries are to be permitted, then there is no reason not to allow actions for mental injuries such as intentional defamation, outrageous conduct, false arrest, malicious prosecution and the rest of the panoply of intentional torts. If this is permitted, then there is also little reason not to permit actions in negligence, although most of the states which have allowed this have had to redefine "negligence" so as to exclude ordinary household accidents and many other kinds of conduct which would ordinarily fall within the parameters of that concept.

Many of the reasons given for preserving and also most of the reasons given for abolishing marital immunity are, in my opinion, superficial if not specious. Marriage is the oldest of human institutions. Many of the reasons ascribed for its incidents are shrouded in antiquity. Nevertheless, as recently as one year ago this Court stated:

> "Only a husband and wife ... may own property as tenants by the entirety. Marriage is a unique status in the law, having rights, incidents and liabilities unlike any other." *Griffin v. Prince*, 632 S.W.2d 532, 534 (Tenn.1982).

In my view the Married Women's Emancipation statutes are not dispositive of this subject. The immunity was not gender-based or discriminatory as to sex. A husband could no more sue his wife than she could sue him. Certainly the Married Women's Emancipation acts did not purport to confer upon him rights of action which did not theretofore exist.

This Court has always stated that there was no right of action in tort between two persons as to whom there was a valid subsisting marriage. In my view no reason other than marriage is needed to support the existence of the rule. Persons may not enter into marriage as they enter into an ordinary business contract. They must obtain a license and go through a solemn ceremony, involving the most personal and intimate of vows. So long as that relationship exists, in my opinion, actions in tort, judgments, executions and garnishments are foreign to the relationship, no matter how much it may deteriorate. There are ample remedies available for terminating a marriage which has become intolerable. In addition the laws of divorce, separate maintenance, marital support and the criminal laws contain remedies which will ordinarily afford adequate relief to persons having the legal status of being a party to a subsisting marriage.

I do not think that the institution of marriage will come to an end or be irrepa-

---

1. Although not necessarily prohibiting interspousal actions, statutes dealing with wrongful death give control of the right of action to the surviving spouse. T.C.A. §§ 20-5-109, -110.

rably damaged by permitting tort actions, intentional or negligent. Those who state that married persons are not in a different status from others, however, in my opinion are in error and need only examine the numerous statutes in this state on the subject. There are statutes dealing with preferences to spouses in connection with insurance proceeds,[2] exemption from creditors' claims,[3] the holding of property as tenants by the entireties[4] and numerous others. All of these may be affected to one degree or another by permitting tort actions and judgments pursuant thereto between spouses. In my opinion, therefore, this is a subject entirely appropriate for the Legislature, and I do not consider that it is improper to adhere to well established precedent, particularly a decision as carefully considered as that of this Court in *Hance v. Haun,* 216 Tenn. 176, 391 S.W.2d 621 (1965).

In that case the Court considered the identical statutes as those involved in the present case—that is, the Married Women's Emancipation statutes and the wrongful death statutes. Once statutes have been interpreted by the courts, such interpretation should be adhered to unless found to be plainly erroneous. Nothing has changed in society in the eighteen years since *Hance v. Haun,* in my opinion, to justify an overruling of this decision.

Further, while we know nothing of the merits of this case, there is not necessarily much "justice" in permitting the stepson, through a tort judgment, to take all or a substantial part of the husband's estate or to obtain a judgment against him which cannot be discharged in bankruptcy or otherwise. Under the allegations here the husband may not collect any insurance upon the life of his wife if he feloniously killed her, nor can he inherit from her[5] and, of course, he may be prosecuted criminally if he has committed an unjustifiable homicide.

I have real reservations, however, about the wisdom of permitting an action against him by her child of a former marriage, as a matter of common law. If the Legislature sees fit to permit such proceedings, then this clearly is its prerogative, but it will be done after full hearings and debates with due consideration of the many implications involved, and not from the narrow perspective of one case.

For these reasons I respectfully dissent.

## OPINION ON PETITION TO REHEAR

FONES, Chief Justice.

Defendant has filed a petition to rehear, asking this Court to declare its decision in the instant case to be nonretroactive as to these parties and of prospective effect only.

In *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), the United States Supreme Court announced that state courts could choose consistent with the Federal Constitution to apply those state court decisions which depart from established precedent in either a retroactive or prospective manner. The practice of prospective application only as to such decisions became known as the doctrine of nonretroactivity, or the "Sunburst" doctrine. Since the *Sunburst* case, the United States Supreme Court has adopted a posture of non-retroactivity only in those instances where (1) the decision at issue either establishes a new principle of law by overruling clear past precedent or decides an issue of first impression whose resolution was not clearly foreshadowed, (2) in light of the prior history of the rule in question, its purpose and effect, retrospective application will retard its prospective operation, and (3) the decision, if applied retroactively, "could produce substantial inequitable results" to the in-

---

2. *E.g.,* T.C.A. §§ 56–7–201 to –203.

3. *E.g.,* T.C.A. §§ 26–2–301 to –311; 30–901 to –914.

4. T.C.A. § 36–602.

5. T.C.A. § 31–117.

**900**

stant litigants. *See, e.g., Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Accord, Cumberland Capital Corp. v. Patty,* 556 S.W.2d 516 (Tenn.1977).

Defendant contends that the overruling of *Hance v. Haun, supra,* and our departure from the rule barring derivative suits for the wrongful death of a spouse resulting from the other spouse's intentional tort mandates our giving the decision in the instant case prospective application only since retroactive application would prejudice defendant who "could have reasonably believed at the time of the incident in question that he was immune from civil liability for his acts" and would impose an enormous burden of litigation upon Tennessee courts. We find defendant's contentions to be without merit. We cannot accept that defendant would intentionally kill his spouse in reliance upon the doctrine of inter-spousal immunity as a shield from civil liability or that any spouse has heretofore placed reliance thereon in committing an intentional tort against the other spouse.

In *Rogers v. Yellowstone Park Co., supra,* the Supreme Court of Idaho abrogated the doctrine of interspousal immunity in its entirety and made its decision applicable to the litigants at bar, to all actions pending on the date the *Rogers* decision became final, and to all actions arising thereafter. *Id.* 539 P.2d at 577–78. *Accord, MacDonald v. MacDonald, supra,* at 75; *Shook v. Crabb, supra,* at 620; *Merenoff v. Merenoff, supra,* 388 A.2d at 963–64.

■ Our sense of fairness dictates that we adopt a similar "pipeline approach" here. We therefore think that this decision is not the type that requires pure non-retroactive application of the rule in question and apply our decision allowing wrongful death suits resulting from intentional torts between spouses to the litigants at bar and to those claimants who have filed similar wrongful death actions in which final judgment had not been rendered on the date of the release of the above decision. Other-

wise, this decision is applicable only to those wrongful death suits resulting from intentional torts committed after the date of this opinion's release.

Defendant's petition to rehear is denied.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.