[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant cases involve the wrongful and untimely deaths of three children, Jessica Colon, Vanessa Green and Francisco Perez, III, all under five years of age. The estates of Jessica Colon (Geraldine Ficarra, Administratrix) and Vanessa Green (Nicholas Wocl, Administrator) are represented by the Law Offices of James O. Gaston. The estate of Francisco Perez, III (Paul Brozdowski, Administrator) is represented by the law firm of Meehan Meehan. The cases have been consolidated (see Motion to Consolidate, dated January 3, 1992). The actions arise as a result of a fire that occurred at the rented residence of the decedents on December 21, 1989 when their mother, using the stove for heat, left a pot of water on the stove and went out leaving four children under the age of five alone. A fire began and three of the four children died from asphyxiation. The estates have brought suit against the defendant, The Southern Connecticut Gas Company for, among other things, negligently and wrongfully turning on the gas for the premises two days prior to the fire, when it knew or reasonably should have known of the use of a stove as the sole source of heat, that such was a misuse of a gas appliance, and was in violation of the company's own policy, to turn on the gas with knowledge of the misuse. Moreover, the plaintiffs claim that gas appliances had been "red tagged" by the defendant, and a gas employee informed the mother of the children to put a pan of water on the stove to disburse heat.
The defendant, The Southern Connecticut Gas Company filed Motions to "Add" defendants Abraham Aizelman d/b/a Keren-Abraham, the landlord of the building, the City of Bridgeport, and Maria Colon the mother of the decedents). The plaintiffs have objected claiming: "that there is no such motion or authority to `add' a defendant; the statute of limitations bars such an addition; Conn. Gen. Stat. Section52-572h (Tort Reform II) does not permit contribution except between defendants post judgment and hence such an addition is not permitted; the defendant has failed to state what if any claim can be brought against the respective persons or entities; governmental immunity bars the claim against the City of Bridgeport; parental immunity bars any claim against the mother, Maria Colon; and the whereabouts of Abraham Aizelman are unknown to the extent it is impossible to serve him." CT Page 7914
Conn. Gen. Stat. 52-102 provides, in pertinent part, that "[u]pon motion made by any party . . . to a civil action . . . the person named in the party's motion shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein . . ." Conn. Gen. Stat. 52-572h(c) states: "In a negligence action to recover damages resulting from personal injury . . . occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the . . . damages . . ." Subsections (d) and (n) of Conn. Gen. Stat. 52-572h prescribe the manner in which the proportionate share of liability attributable to each party is to be determined.
"What is now Conn. Gen. Stat. 52-572h abolishes the common law rule of no contribution between joint tortfeasors and provides for allocation of fault among them and apportioning any award of damages consistent with their degree of fault." Lombardi v. Johnstone, 4 CSCR 386 (1989) (Healey, S.T.R.). Under Tort Reform I, Conn. Gen. Stat. 52-572h provided that such allocation be made as among any negligent "persons." Id. See Conn. Pub. Acts. No. 86-338. "Thus, a defendant named by the plaintiff could have his or her liability reduced in proportion to the liability of other persons without their presence in the lawsuit as co-defendants." Howard v. Capellan,2 Conn. L. Rptr. 68 (1990) (Maloney, J.). The statute was amended, however, by Conn. Pub. Acts No. 87-277, Tort Reform II, which changed the wording of the statute to specify that liability is apportioned only when more than one "party" was negligent. See Conn. Pub. Acts No. 87-277 3. As a result of this change, "a defendant named by the plaintiff cannot have his or her liability reduced in proportion to the liability of another person unless that person is also a party to the action." Howard v. Capellan, 2 Conn. L. Rptr. 68; see also Hillman v. York Auto of New Haven, 2 Conn. L. Rptr. 683 (1990) (Schimelman, J.). "Such other person, therefore, is necessary as a party defendant for a complete determination of the question of proportionate liability." (Emphasis added.) Howard v. Capellan, 2 Conn. L. Rptr. 68.
Plaintiff's decision not to sue these three prospective parties[1] does not preclude the defendant from bringing them in now. "Sections 52-102 and 52-572h establish a statutory scheme to allow a defendant to have a person named as a co-defendant, even over the objection of the plaintiff, if that person is potentially liable to the plaintiff. See Royster, Joint and Several Liability and Collateral Sources Under the 1987 Tort Reform Act, Conn. Law Journal, Vol. 62, No. 5, 257-266 (Oct. 1988)." Howard v. Capellan, supra. See also Snipes v. Fisher, CT Page 7915 4 Conn. L. Rptr. No. 13, 416 (August 12, 1991) (Wagner, J.): and Blandetti v. Pennington, 6 Conn. L. Rptr. No. 12, 358 (May 25, 1992) (Austin, J.). Unlike the impleader statute, Conn. Gen. Stat. 52-102a, which allows the defendant to look to a third party who is or may be liable to him for all or part of the plaintiff's claim against him, Conn. Gen. Stat. 552-102, the statute upon which the defendant herein relies, asks the court to cause a third person to be a defendant because he is or may be liable to the plaintiff. The only exemption specifically provided for by that statute is in instances of immunity.
The plaintiffs claim both the mother, Maria Colon, and City of Bridgeport are protected by the exemption. The city, may or may not be immune depending upon whether discretionary or ministerial activity is involved. Gordon v. Bridgeport Housing Authority, 208 Conn. 161 (1988). However, even if discretionary, there would need to be an inquiry and determination as to whether any of the three exceptions were involved. See Evons v. Andrews, 211 Conn. 501, 505 (1989). Therefore, in the absence of even any suggested pleadings against which such a determination could be made, it would be premature to rule in a vacuum as a matter of law that the city were immune. Therefore, the motion to cite in is granted as to the city. When faced at the appropriate time with a motion to strike, the court will be able to decide whether governmental immunity applies.
The next inquiry addresses the parental immunity doctrine which is said to bar
 "an unemancipated minor from suing his or her parents for injuries caused by the negligence of that parent . . . Under this doctrine `a parent is not liable civilly to his child for personal injury inflicted during [the child's] minority. . .'"
Dubay v. Irish, 207 Conn. 518, 523 (1988). Public policy is the basis for the parental immunity doctrine:
 "[a]uthority in the parent to require obedience in the child is indispensable to the maintenance of unity in the family. Anything which undermines this authority brings discord into the family, weakens its government and disturbs its peace, is an injury to society and to the state." CT Page 7916
Dzenutis v. Dzenutis, 200 Conn. 290, 293 (1986).
Although the parental immunity doctrine has been abrogated for actions involving negligence in the operations of motor vehicles, aircraft and boats, General Statutes 52-572c, and negligence of the parent in the course of conducting a business, Dzenutis, id. 301, nevertheless in Connecticut the doctrine has not been abrogated in cases of negligent supervision. Dubay v. Irish, supra at 527; Pettengill v. Pettengill, 18 Conn. App. 557,559 (1989); White v. Men-Boz, Inc., 4 CSCR 623 (July 21, 1989, Schaller, J.).
In this case, the defendant argues that because the mother pled no contest to "first degree reckless endangerment," her conduct rises to a level that would warrant deviation from the parental immunity doctrine that applies where only negligence is involved. Conn. Gen. Stat. 53a-63 provides:
 "(a) a person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates risk of serious physical injury to another person."
In the context of a criminal prosecution, the definition to be applied is contained in Conn. Gen. Stat. 53a-3 (13) which provides:
 "A person acts `recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
The Supreme Court treats the terms negligent and recklessness "substantially the same" with regard to whether the statute of limitations will preclude a late amendment of a complaint to allege wilful, wanton and/or reckless conduct when the initial timely complaint alleged negligence. (See Gurliacci v. Mayer, 218 Conn. 531, 547 (1991)); but in deciding the "relation back" issue, the Court actually focused on whether two different sets of circumstances and facts were being alleged in CT Page 7917 the amended complaint than had been alleged initially. Id. at 549.
In deciding whether the parental immunity doctrine is a bar to a child's action against a parent based upon the parent's wilful, wanton and/or reckless conduct, a different inquiry is held and a brief review of history is warranted.
 The history of the rise and decline of parent-child immunity nationwide has generally paralleled its course in this state. After the rule originated in Mississippi in 1891 in the case of Hewlett v. George, 68 Miss. 703, 711, 9 So. 885 (1891), it gained widespread acceptance. By 1929, when nonliability of a parent for personal injury to a child became the law in this state, the doctrine had been accepted in every one of eleven states where the issue had arisen. Mesite v. Kirchenstein, supra, 83. The rule, which has long been criticized by commentators, began to lose its judicial following after a Wisconsin decision in 1963 abrogated it entirely except as to the exercise of parental authority or parental discretion in the care of children. Goller v. White, 20 Wis.2d 402, 413, 122 N.W.2d 193 (1963); Prosser Keeton, Torts (5th Ed.) 122, p. 907. The American Law Institute in 1977 rejected general tort immunity between parent and child, though recognizing the need for different treatment of some intra-family negligent torts involving parental duties or activities within the home. 4 Restatement (Second), Torts 895G, comment k (1979).
Dzenutis v. Dzenutis, supra at 295-6. Indeed, a review of cases in various jurisdictions around the country pertaining to the parental immunity doctrine reveals a distinct change in philosophy.
 "The strong trend against across the board application of a rule of parental immunity in tort cases reflects a growing recognition that such a sweeping application results in excessive protection of the interests favored by CT Page 7918 the rule in derogation of the general principal that there should be no wrong without a remedy."
Black v. Solmitz, 409 A.2d 634 (Me. 1979).
This trend has mushroomed. Many states have abrogated the doctrine at least insofar as motor vehicle accidents are concerned. See e.g. Merrick v. Sutterlin, 93 Wash.2d 411,610 P.2d 891 (1980); and Gelbman v. Gelbman, 23 N.Y.2d 434,297 N.Y.S.2d 529, 245 N.E.2d 192 (1969). Others, when confronted with the doctrine for the first time, have refused to apply it. See e.g. Elkington v. Foust, 618 P.2d 37 (Utah 1980); and Wood v. Wood, 135 Vt. 119, 320 A.2d 191 (1977). Some legislatures like Connecticut have enacted statutes abrogating the doctrine in automobile negligence cases. See e.g. N.C. Gen. Stat. 1-539.21 (Supp. 1977). Other exceptions have been made to the rule, thereby eroding it further. For example, one well recognized exception involves negligent and injurious acts by a father while acting in the course of his business or vocation. Felderhoff v. Felderhoff, 473 S.W.2d 928 (Tex. 1971); Stevens v. Murphy, 69 Wash.2d 939, 421 P.2d 668 (1966); Dunlap v. Dunlap,84 N.H. 352, 150 A. 905 (1930); Dzenutis v. Dzenutis, supra at 299. And some jurisdictions have opted for total abrogation. See Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971); Elan v. Elan, 275 5C132, 268 S.E.2d 109 (1980).[2]
Whether it is appropriate to look behind the rule to see if family harmony will be jeopardized by allowing suits between parents and children has been asked only a very few times in Connecticut and the question has been answered in the affirmative by our Supreme Court only once. Id. at 300. But the Court therein would not decide whether an allegation of wilful, wanton and/or reckless conduct, would be sufficient to abrogate the rule. Rather the Court decided the case based on the business activity setting, but before doing so referenced some of its earlier decisions which indicated it would not.[3]
A growing number of jurisdictions have recognized that such misconduct should be exempted from the doctrine of parental immunity because it does not fall under the rubric of "a simple discharge of parental duties." See e.g. Jenkins v. Snohomish County Public Utility Dist. No. 1, 105 Wash.2d 99, 713 P.2d 79,83 (1986); Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983); Larson v. Buschkamp, 105 Ill. App.3d 965, N.E.2d 221 (1982); Oldman v. Bartshe, 480 P.2d 99 (Wyo. 1971); Groves v. Groves,152 W. Va. 1, 158 S.W.2d 710 (1968); Stevens v. Murphy,69 Wash.2d 939, 421 P.2d 668 (1966); Hoffman v. Tracy, 67 Wash.2d 31,406 P.2d 323 (1965); Trevarton v. Trevarton, 151 Colo. 418,378 P.2d 640, 642 (1963); Nudd v. Matsoukas, 7 Ill.2d 608, CT Page 7919131 N.E.2d 525 (1956); Aboussie v. Aboussie, 270 S.W.2d 636
(Tex.Civ.App. 1954) (dictum); Wright v. Wright, 85 Ga. App. 721,70 S.E.2d 152 (1952) and Cowgill v. Boock, 189 Or. 282, 218 P.2d 445
(1950).
Under the facts of this case, to establish liability, it would be enough for a plaintiff to show that, indifferent to consequences, the parent, Maria Colon, intentionally acted in such a way that the natural and probable consequence of her act was injury to the plaintiff. Willful and wanton conduct is defined in AMI Civil 2d 401 as follows:
 ". . . that the person knew or reasonably should have known in the light of the surrounding circumstances that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of consequences.
Although the Supreme Court has
 "attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that `willful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . . It is at least clear. . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . ." W. Prosser W. Keeton, Torts (5th Ed.) 34, p. 214.
Dubay v. Irish, supra at 533, (citation omitted). The proper inquiry concerns the tortious nature of the parent's acts that causes the injury. Foldi v. Jeffries, 93 N.J. 533,461 A.2d 1145 (1983). Not every spanking is a battery and not every "time out" in one's bedroom is a false imprisonment. The parent's prerogative to exercise authority and attend to a child's needs must be exercised within reasonable limits. When her conduct so far exceeds the discharging of normal parental duties and responsibilities, the public policies of peace, CT Page 7920 tranquility and discipline in the home are no longer served by this doctrine of immunity.
In Nudd v. Matsoukas, supra at 531, it was recognized that for the sake of family harmony, suits for negligence should be prohibited but that public policy also required that suits for willful and wanton misconduct should be permitted. The court stated its position as follows:
 "To tolerate such misconduct and deprive a child of relief will not foster family unity but will deprive a person of redress without any corresponding social benefit for an injury long recognized at common law."
As the Court in Cowgill v. Boock, supra at 449-452 pointed out there is a distinction between the two types of conduct in question. "Negligence and serious and willful misconduct are entirely different in kind. The latter involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."
In this case, the mother's plea[4] of nolo contendere, resulted in a finding by the court that she was reckless. State v. Gilnite, 202 Conn. 369, 374 N.4 (1987). This is enough of a distinction from the negligent type of conduct encompassed by the rule, that this court finds that the rule should not be applied.[5] As stated in Luna v. Clayton, 655 S.W.2d 893 (Tenn. 1983) (wherein the Court was evaluating spousal immunity in a case where the marriage ceased upon the death of a spouse).
 "This Court recognizes that courts may have previously fashioned a rule of immunity from wrongdoing, having adopted a posture at an earlier date in response to what appeared to be desirable then as a matter of policy; yet when it later appears to be unsound within a given context, especially when the reasons upon which the immunity is based no longer exist, it remains within the domain of the judiciary to reject the applicability of such a rule."
Id. at 897.
The few remaining arguments against the defendant's request CT Page 7921 can be dealt with briefly. The mother, who is out of the jurisdiction can be served pursuant to Conn. Gen. Stat.52-59b(a)(2) and (c) or 52-57a. As to the landlord, the plaintiffs managed to serve him once before. See Footnote 1. The statute of limitations problem (See Protter Brown Thompson 
Co., 25 Conn. App. 360 (1991) also does not preclude these three defendants from being brought in. See George v. Royes, 5 Conn. L. Rptr. No. 11, 301 (December 30, 1991). It is necessary for them to be made parties so that the degree of negligence attributable to each can be ascertained regardless of the fact that the plaintiff's inability to recover from them remains the same.
Finally, there exists the question of who should serve these defendants and who should draft the writ. Conn. Gen. Stat. 52-102 does not address this quagmire. In Blandette v. Pennington, 6 Conn. L. Rptr. No. 12, 358 (May 25, 1992) (Austin, J.) the Court examined the issue based on the defendant's motion, pursuant to Conn. Gen. Stat. 52-102 with the proposed amended complaint attached thereto. See also McKeever v. Papain, et al, 4 Conn. L. Rptr. No. 12, 383, 385 (August 5, 1991) (Jones, J.). In other cases that have been presented to this court, the plaintiffs were content to draft the necessary writ, summons and complaint. The three plaintiffs involved herein do not want to draft allegations against these three parties. Indeed it is in the moving defendant's interests to draft such pleadings that can withstand a motion to strike. Otherwise, the three added defendants will not be parties to whom the jury can apportion liability. (See Conn. Gen. Stat.52-572h(f) and (n) re "released" and "settled".) Therefore, the defendant Southern Connecticut Gas Company should be the party responsible for furnishing the necessary allegations as it sees fit.
KATZ, J.