## IN THE COURT OF APPEALS OF TENNESSEE
### AT NASHVILLE

**FILED**

**June 18, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

RICHARD TUCKER AND )
JOE DIFIORE, )
)
    Plaintiffs/Appellees, )    Montgomery Circuit No. C8-491
**v.** )
)     Appeal No. 01A01-9708-CV-00426
**CHRISTOPHER CARR TURNER,** )
)
    Defendant/Appellant. )


APPEAL FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE


THE HONORABLE JAMES E. WALTON, JUDGE


For the Plaintiffs/Appellees:        For the Defendant/Appellant:

James D. Kay, Jr.                  Gregory D. Smith
Bridgett A. Wohlpart           Clarksville, Tennessee
Nashville, Tennessee


**AFFIRMED**


HOLLY KIRBY LILLARD, J.


CONCURS:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This malicious prosecution case stems from a previous separate malicious prosecution lawsuit. The defendant in this case was charged with certain crimes; a grand jury later cleared him of the charged crimes. The defendant then filed a malicious prosecution and abuse of process case against the two plaintiffs in this case. The defendant in this case subsequently confessed to the crime and nonsuited his malicious prosecution case. The plaintiffs in this case then filed a malicious prosecution case against the defendant. During the jury trial, the trial court denied both the plaintiffs' and defendant's request for a directed verdict. The jury subsequently found in favor of the plaintiffs and awarded compensatory and punitive damages to the plaintiffs. The defendant appeals. We affirm.

On October 28, 1990, the defendant, Christopher Turner ("Turner"), acted as a "lookout" in the burglary and theft of items from a truck belonging to plaintiff Richard Tucker ("Tucker"). Plaintiff Joe Difiore ("Difiore"), a detective with the Clarksville Police Department, was assigned to the case. Several leads indicated Turner's involvement in the burglary, causing Difiore to seek an indictment against Turner. Difiore testified in the grand jury proceedings against Turner. At the grand jury proceeding, Turner lied under oath and denied his involvement. This testimony plus Turner's two favorable polygraph tests led the grand jury to return a "no true bill," clearing Turner of the charges.

On February 25, 1991, within days of the grand jury proceeding, Turner filed a lawsuit against Tucker and Difiore. He was represented by his father, attorney Cleveland Turner.[1] The lawsuit alleged malicious prosecution and abuse of process, and sought one million dollars in damages. Pretrial activity ensued.

During the investigation of Turner's involvement in the burglary and after the lawsuit against Tucker and Difiore was filed, there was considerable publicity in the media about the matter, including articles in the Nashville and Clarksville newspapers. One article, dated December 21, 1990, contains a statement by Cleveland Turner that "When it's all over with, we're going to have our say and it's going to be at 8th and Broadway in Nashville." The article notes that this is the location of the federal court house in Nashville. He continues, "Somebody's going to pay. When

---

[1] Turner alleges that he did not know about the lawsuit until after it was filed. However, it is undisputed that once he learned it had been filed, he allowed it to proceed.

it's all over with, there's going to be a day of reckoning." He further stated, "The people of Clarksville should know that they are subsidizing people grinding their own axes." Joyce Turner, Christopher Turner's mother, states that, "I will not rest until I get even with Joe Difiore. I will get him."

Several months later, Turner was implicated by other persons involved in the burglary of Tucker's truck. On July 1, 1991, Turner admitted to his involvement in the burglary and theft. On July 2, 1991, Turner voluntarily nonsuited the case against Tucker and Difiore. Turner later entered a nolo contendere plea in exchange for two years probation, a thousand hours of community service, and restitution.

After Turner's malicious prosecution lawsuit was nonsuited, Tucker and Difiore ("plaintiffs") each filed separate malicious prosecution lawsuits against Turner, seeking damages for the approximately five month period in which Turner's malicious prosecution case was pending. These two lawsuits were later consolidated into this action, which was tried before a jury.

The evidence at trial showed that the considerable publicity surrounding the original malicious prosecution suit against Tucker and Difiore adversely affected them. Tucker testified that the earnings from his construction company suffered due to negative newspaper articles and that people approached him on the street and asked him why he was persecuting Turner. This caused him humiliation and embarrassment. Tucker testified that although his insurance company agreed to answer the complaint, the company had not promised continued coverage.

Difiore testified about the numerous hours he spent discussing the case with his attorney, the negative comments made by others, and the embarrassment and humiliation caused by the suit. Difiore also stated that he did not sleep through a single night while the case was pending and that he lost forty-five pounds in the first two to three months after the suit was filed. The newspaper article referred to above was introduced to show how the media publicity affected Difiore's state of mind. The article referred to "somebody" having to "pay" and that Turner's family would "get" Difiore. These statements, Difiore testified, caused him to worry about possible bankruptcy and the safety of his family. Difiore testified that being sued for malicious prosecution made him realize his liability as a detective, and prompted him to take a pay cut and switch to a lower paying non-detective position with the police department.

2

The plaintiffs as well as the defendant Turner filed motions for a directed verdict. Turner's motion alleged that, since the underlying suit was nonsuited, the plaintiffs failed to prove an essential element of their claim, a final termination of the underlying suit in their favor. Both motions for directed verdict were denied.

The jury returned a verdict in favor of Tucker and Difiore, awarding compensatory damages of $52,000 to Tucker and $10,500 to Difiore. The jury also awarded punitive damages of $50,000 to Difiore. Tucker waived his right to punitive damages after the case was submitted to the jury and after the jury returned a verdict in his favor indicating that he was entitled to punitive damages. Turner now appeals the trial court's denial of his motion for directed verdict.

On appeal, Turner asserts that the trial court should have directed a verdict in his favor because the plaintiffs failed to prove an essential element of malicious prosecution. Turner contends that, since the underlying suit was nonsuited, there was no final termination of the prior action in Tucker and Difiore's favor, an essential element of the claim. Turner also argues that the trial court erred in allowing the plaintiffs to testify as to their mental and emotional damages without presenting expert testimony.

When reviewing a motion for a directed verdict, the appellate court must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. After discarding all countervailing evidence, if there is any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the evidence as a whole, the motion must be denied. *See Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. App. 1995). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the defendant under any of the theories the defendant had advanced. *See Conatser*, 920 S.W.2d at 647.

In a malicious prosecution action, the plaintiff must prove three elements: (1) that the defendant instituted a prior suit or judicial proceeding against the plaintiff without probable cause, (2) that the defendant brought the action with malice, and (3) that the action ended in a final determination in favor of the plaintiff. *See Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992); *Kauffman v. A. H. Robins Co.*, 448 S.W.2d 400, 402 (Tenn. 1969). We must first determine whether a voluntary nonsuit satisfies the third element, requiring a final determination in favor of

3

the defendant in the underlying action.

Turner maintains that, at the time of the nonsuit, Tennessee law was clear that a nonsuit was not a final determination in favor of the defendant in the underlying action. *See Price v. Boyle Inv. Co.*, 1990 WL 60659 (Tenn. App. May 11, 1990). However, less than a year after Turner voluntarily nonsuited his malicious prosecution action against Tucker and Difiore, the Tennessee Supreme Court held that a nonsuit is a final determination in favor of the defendant. *See Christian v. Lapidus*, 833 S.W.2d 71 (Tenn. 1992). The Court stated,

> [W]e are persuaded, and now hold, that abandonment or withdrawal of an allegedly malicious prosecution is sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accompanied by a compromise or settlement, or accomplished in order to refile the action in another forum.

*Id.* at 74 (citing Restatement (Second) of Torts § 674, cmt. j (1977)). Under *Lapidus*, then, the nonsuit in this case was a final determination in the defendants' favor. Tucker and Difiore argue that *Lapidus* should be applied retroactively to this case. Turner argues against the retroactive application of *Lapidus*, and maintains that *Price* controls.

In *Price*, cited by Turner, the defendant gave notice that he was going to amend his cross-claim to include malicious prosecution. The plaintiff then sought a voluntary nonsuit. The trial court denied the nonsuit because it believed that the nonsuit would cause the defendant to suffer a legal detriment, namely that the defendant would be prevented from asserting his malicious prosecution claim because there would be no final judgment in his favor. The appellate court affirmed the trial court's denial of the nonsuit, noting the plaintiff's ability to reinitiate the action against the defendant after a voluntary dismissal without prejudice: "Since it was a voluntary dismissal, the suit readily could have been revived at anytime within the year. To call this a 'termination' is a misnomer." *Price*, 1990 WL 60659, at *4.

*Price* indicated that its holding should be limited to the facts of that case. The Court quoted the following, describing it as "appropriate and applicable to the case at bar":

> "We do not mean to imply that by filing a counterclaim in malicious prosecution, or by professing an intention to do so later, any defendant may defeat any motion for dismissal without prejudice. Such a rule would undoubtedly make it impossible for a plaintiff ever to dismiss voluntarily without prejudice. Our decision is limited very closely to the facts of this case."

*Id.* at *5 (quoting *Selas Corp. of Am. v. Wilshire Oil Co. of Tex.*, 57 F.R.D. 3, 7 (E.D. Pa. 1972)). *Price* also quotes with approval the following excerpt from the Restatement of Torts: "Whether a

withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn." *Id.* at *4. (quoting Restatement (Second) of Torts § 674, cmt. j. (1976)).

In this case, Turner confessed to participation in the burglary shortly before the underlying lawsuit was nonsuited. Under Rule 11 of the Tennessee Rules of Civil Procedure, Turner could not have refiled the malicious prosecution case without risking sanctions. Therefore, the nonsuit effectively terminated any further action by Turner against the defendants Tucker and Difiore. Consequently, even under the law prior to *Christian v. Lapidus*, the nonsuit under these facts would be considered a final determination in the defendants' favor.

In addition, it is also clear that *Lapidus* should be applied retroactively in this case. The doctrine of nonretroactivity limits the circumstances under which a judicial decision should be applied retroactively. *See Luna v. Clayton*, 655 S.W.2d 893, 899 (Tenn. 1983) (citing *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S. Ct. 145, 77 L. Ed. 360 (1932)). The doctrine of nonretroactivity applies only where

> (1) the decision at issue either establishes a new principle of law by overruling clear past precedent or decides an issue of first impression whose resolution was not clearly foreshadowed, (2) in light of the prior history of the rule in question, its purpose and effect, retrospective application will retard its prospective operation, and (3) the decision, if applied retroactively, "could produce substantial inequitable results" to the instant litigants.

*Id.* (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971)).

The Tennessee Supreme Court again discussed retrospective application of judicial decisions in *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn. 1984). The Court in *Marshall* opined that if a party justifiably relies on a subsequently overruled judicial decision and those reliance interests would be defeated by retroactive application of the overruling decision, the overruling decision should be limited to prospective application. *See id.* at 215 (citing Annotation, *Overruling Decisions--Application*, 10 A.L.R.3d 1371, 1386 § 5(b) (1966)). The *Marshall* Court noted that " 'prospective only' application of an overruling decision should be limited to a case in which the hardship on a party who has relied on the old rule outweighs the hardship on the party denied the

benefit of the new rule." *Id.* (citing Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533 (1977)).

Utilizing the factors enumerated in *Luna*, we must first determine whether *Lapidus* "overrul[ed] clear past precedent or decide[d] an issue of first impression whose resolution was not clearly foreshadowed." *Luna*, 655 S.W.2d at 899. As noted above, the language in *Price* indicated approval of a case-by-case determination of whether a nonsuit constitutes a final determination. *Price*, 1990 WL 60659, at *5. Therefore, *Price* cannot be considered "clear past precedent" on the issue of whether a nonsuit is a final determination in favor of defendants. Second, there is no reason why retrospective application of *Lapidus* would "retard its prospective operation." *Luna*, 655 S.W.2d at 899. Third, there is no evidence that the retroactive application of *Lapidus* would produce "substantial inequitable results." *Id.* Although Turner argues that he relied on *Price* when he took a nonsuit, in light of Turner's confession, he had no choice except to nonsuit the underlying lawsuits, regardless of *Price*. Under all of these circumstances, Turner has not presented proof of hardship or reliance that would warrant a "prospective only" application of *Lapidus*. Consequently, under *Lapidus* and considering the facts in this case, Turner's nonsuit of the underlying lawsuit would be considered a "final determination" in favor of Tucker and Difiore. Therefore, the elements of a malicious prosecution claim were satisfied, and the trial court did not err in denying Turner's motion for a directed verdict.

Turner also argues on appeal that the trial court erred in admitting Tucker and Difiore's testimony on their mental and emotional distress damages. The trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. App. 1996); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. App. 1995).

"[T]he elements of damages recoverable in a malicious prosecution suit are those which 'proximately result to the plaintiff, his person, property, or reputation from a previous unsuccessful civil or criminal proceeding which was prosecuted without probable cause and with malice' " *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn. App. 1992) (citing *Ryerson v. American Sur. Co.*, 213 Tenn. 182, 185, 373 S.W.2d 436, 437 (1963)).

Turner cites *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966), for the

6

proposition that the plaintiffs were required to submit expert testimony to recover for mental and emotional damages. However, *Medlin* involved the tort of outrageous conduct, not malicious prosecution. *Medlin* addresses mental and emotional distress "unconnected with any independently actionable tort or with any contemporaneous or consequential objectively ascertainable injury." *Id.* at 272. The Court reasoned that, to recover for mental injury standing alone, a plaintiff must show serious mental injury to prevent trivial claims. *See id.* at 274. In a malicious prosecution case, however, there is an independent tort -- the malicious prosecution. In at least two other Tennessee malicious prosecution cases, plaintiffs were allowed to testify as to their mental distress without expert testimony. *See Harmon v. McGill*, No. 03A01-9311-CV-00404, 1994 Tenn. App. LEXIS 588 (Oct. 20, 1994); *Hardin v. Caldwell*, 695 S.W.2d 189, 192 (Tenn. App. 1985). We find no abuse of discretion in the trial court's admission of the plaintiffs' testimony on this issue.

In sum, we find that the nonsuit in this case was a final determination in favor of Tucker and Difiore, and thus the proof presented at trial proved the essential elements of the plaintiffs' malicious prosecution claim. The trial court's decision to deny Turner's directed verdict is affirmed. In addition, we find that the trial court did not abuse its discretion in allowing Tucker and Difiore to testify about their mental and emotional distress.

The decision of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.


_____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____

**ALAN E. HIGHERS, J.**


_____

**DAVID R. FARMER, J.**